UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **GENTRY VINSON** | **CIVIL ACTION NO. 20-1425** |
| **VS.** | **SECTION P** |
| | **JUDGE S. MAURICE HICKS, JR.** |
| **CADDO CORRECTIONAL CENTER, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Plaintiff Gentry Vinson, a prisoner at Caddo Correctional Center proceeding pro se and in forma pauperis, filed this proceeding on approximately October 29, 2020, under 42 U.S.C. § 1983. He names the following defendants: Caddo Correctional Center, Nurse Lanell, Nurse Brocette, Sheriff Steve Prator, and Director Wright.[1]

For reasons below, the Court should retain Plaintiff's claims of lack of medical care against Lanell and Brocette. The Court should dismiss the remaining claims.

## Background

Plaintiff alleges that on November 11, 2019, he discovered that his blood pressure medication was not on "the mobile medical cart . . . ." [doc. # 1, p. 4]. For the next two days, his medication was not on the cart. *Id.*

On November 13, 2019, he informed a nurse that his head was aching "very bad," the nurse told him to fill out a "sick call," and he completed a sick call. *Id.* Later that day, Plaintiff rang an emergency doorbell in his cell "to inform the on-duty deputies that he needed medical attention" because he was very weak and had a "very bad" headache. *Id.* He rang the doorbell

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

for about an hour, but no one came. *Id.* "By the next shift, [he] could barely move and [his] cellmate . . . had to help [him] to [his] feet . . . ." *Id.* A deputy standing in front of Plaintiff's cell told Plaintiff that he could not assist and then walked away. *Id.*

On November 14, 2019, Plaintiff was weak and "could barely get up to eat[,]" so his cellmate retrieved food for him. *Id.* at 5. He began to feel anxiety "all over" his body, was too weak to eat or drink, and felt numbness in his fingers and right hand. *Id.* Plaintiff's cellmate rang the emergency doorbell, and a deputy arrived about twenty minutes later. *Id.* His cellmate told the deputy that Plaintiff was sick, and Plaintiff told the deputy that "something was very wrong," that he was weak, and that he was concerned with his blood pressure and blood sugar. *Id.* Plaintiff asked for medical assistance. *Id.* Although the deputy stated he would call the infirmary, "no one came to assist" Plaintiff. *Id.*

Later that day, Plaintiff informed deputies at the front desk that "something was going on with [him]," that he felt weak, that he could not feel his fingers, and that he had never felt "this way" before. *Id.* at 5-6. A deputy immediately called the infirmary, but "no one came . . . ." *Id.* at 6. The deputy called twice and even asked if Plaintiff "could be escorted to the infirmary[,]" but a nurse stated, no. *Id.* At that point, Plaintiff was so weak that he could not balance or walk without assistance. *Id.*

Later that evening, Plaintiff asked a deputy to call the infirmary, informing the deputy that he was weak, in pain, lacked his blood pressure medication for approximately three days, and needed his blood pressure checked. *Id.* When Plaintiff arrived at the infirmary, he asked Nurse Lanell to check his blood pressure. *Id.* Nurse Lanell was "very angry and had an attitude . . . ." *Id.* She yelled at him and "unethically" stated, "who do you think you are[?]" *Id.* at 8. Plaintiff was "really weak," walked slowly, and could not maintain his balance "very well." *Id.*

He sat down, and Nurse Lanell called him stupid and a moron, asked what was wrong with him, and told him that she did not have to check his blood pressure. *Id.* Plaintiff stated that his "blood pressure could be the problem for [his] behavior." *Id.* His speech was slurred, and the right side of his face was numbing. *Id.*

Nurse Lanell checked his blood pressure, which was 203/98 the first time and, when she checked again, 198/98. *Id.* Nurse Lanell "checked the mobile cart" and discovered that there was no blood pressure medication on it. *Id.* She "found some medication," but refused to provide it until she made evening rounds. *Id.* He claims that because Lanell refused to timely provide blood pressure medication, he later suffered a stroke. [doc. # 12, p. 2].

Several hours later, Plaintiff was dizzy and weak, he could not swallow, and his face, hand, and leg were numb. *Id.* at 9. He was so weak that when a nurse brought his medication, his cellmate had to help him ingest it. [doc. # 1, p. 8].

On November 15, 2019, Nurse Brocette declined Plaintiff's request to see Dr. Nelson. *Id.* Plaintiff asked Brocette to call Dr. Nelson, informing her that he could not feel his right arm or fingers, but Brocette declined. *Id.* He claims that Brocette's inaction "may have caused" long-term damage to the right side of his body. [doc. # 12, p. 2]. He also suggests that Brocette failed to refer him to other "professional medical care." *Id.* at 4.

On November 16, 2019, following "another sick call request," Nurse Brocette met Plaintiff but "only checked [his] blood sugar." [doc. # 1, p. 8]. He told her that his condition had worsened and asked her to call a physician, but she told him to "shut up" and that Doctor Nelson would arrive on November 19, 2019. *Id.* Plaintiff responded that he would be dead by then, but Brocette stated, "I do not care." *Id.*

3

On November 17, 2019, Plaintiff could only lie on the cell floor. *Id.* He rang the emergency doorbell, but no one assisted him. *Id.* Deputies on duty "were informed" of his condition, but they did not assist. *Id.*

On November 18, 2019, Plaintiff could not move, he could barely swallow, he was drooling, his right leg was very weak, he was slurring, he could not move his right arm and leg, and the right side of his face lacked feeling. *Id.* at 10. He "put in another sick call," but no one helped him. *Id.* He suggests that he was forced to lie on the floor this day and the preceding three days because "no one assisted" him. *Id.*

On November 19, 2019, he was "escorted by wheelchair" to see Dr. Nelson, who immediately sent him to "Ochsner/LSU" where emergency room staff treated him. *Id.* A physician informed Plaintiff that his condition was "very serious," that he had a stroke on the left side of his brain which caused weakness in the right side of his body, and that due to delay in treatment it was possible that Plaintiff would not recover. *Id.* He has restricted mobility, difficulty walking and standing, extreme weight loss, and limitations in his right leg, foot, arm, hand, face, and mouth. [doc. # 12, p. 2].

Plaintiff names Sheriff Steve Prator as a defendant because Prator is allegedly "responsible for providing training, safety medical needs [sic] for all inmates and employee members at all times while at the facility." *Id.* Prator's "employee violated [Plaintiff's] constitutional rights as a result of medical neglect . . . ." *Id.* at 2-3. Prator maintained "a facility that intentionally practice and or provide medical neglect to their in housed inmates, which may have caused serious bodily injury to the plaintiff. [sic]." *Id.* at 4.

Plaintiff names Director Wright as a defendant because Wright is allegedly "responsible for providing additional training to assist her medical staff members to provide professional

4

medical care as needed to the inmates in a timely manner being housed at the facility. [sic]." *Id.* at 3. Plaintiff adds: "Due to neglect from her staff members I had a stroke." *Id.* He also claims, "Director Wright deliberately indifferent by lack of training and or follow up of her medical staff members that have intentionally refused proper and timely medical care for the plaintiff, which may have caused serious injuries to the plaintiff (a stroke). [sic]." *Id.* at 4.

Plaintiff seeks punitive damages and $10,000,000.00. [doc. # 1, p. 11].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis*,* his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Caddo Correctional Center

Plaintiff names Caddo Correctional Center as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. Caddo Correctional Center does not qualify as a juridical person. Accordingly, the Court should dismiss Plaintiff's claims against this entity.

## 3. Conclusory Claims

Plaintiff ostensibly claims: (1) on November 13, 2019, he rang the doorbell for about an hour, but no one came; (2) on November 13, 2019, he could barely move, and a deputy standing in front of his cell told him that he could not assist and then walked away; (3) on November 14, 2019, a deputy stated he would call the infirmary, but "no one came to assist" Plaintiff; (4) a deputy called the infirmary, but "no one came . . . ."; (5) a deputy called the infirmary twice and

even asked if Plaintiff "could be escorted to the infirmary[,]" but a nurse stated, no; (6) on November 17, 2019, he rang the emergency doorbell, but no one assisted him; deputies on duty "were informed" of his condition, but they did not assist; and (7) on November 18, 2019, he "put in another sick call," but "no one assisted" him.

The undersigned previously instructed Plaintiff to name each person who allegedly violated his constitutional rights and from whom he seeks relief. [doc. # 11, p. 4]. Plaintiff, however, does not identify or name a responsible defendant.[3] Accordingly, the Court should dismiss these ostensible claims.

**4. Nurses Lanell and Brocette**

Construing Plaintiff's allegations liberally and in his favor, he pleads plausible claims of failure to provide medical care against Nurses Lanell and Brocette. The Court should retain these claims.

**5. Sheriff Steve Prator and Director Wright**

Plaintiff alleges that Sheriff Steve Prator is "responsible for providing training, safety medical needs [sic] for all inmates and employee members at all times while at the facility." Prator's "employee violated [Plaintiff's] constitutional rights as a result of medical neglect . . . ." Prator maintained "a facility that intentionally practice and or provide medical neglect to their in housed inmates, which may have caused serious bodily injury to the plaintiff. [sic]."

Similarly, Plaintiff alleges that Wright is "responsible for providing additional training to assist her medical staff members to provide professional medical care as needed to the inmates in a timely manner being housed at the facility. [sic]." Plaintiff adds: "Due to neglect from her staff

---

[3] The undersigned does, however, consider these allegations in the context of his claims against Sheriff Prator and Director Wright.

8

members I had a stroke."  He also claims, "Director Wright deliberately indifferent by lack of training and or follow up of her medical staff members that have intentionally refused proper and timely medical care for the plaintiff, which may have caused serious injuries to the plaintiff (a stroke). [sic]."

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).  "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994).  "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, Plaintiff does not plausibly allege that Prator or Wright affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between defendants' conduct and any alleged constitutional violation.[4]  He alleges that Prator's "employee violated [Plaintiff's] constitutional rights as a result of medical neglect . . . ."  Likewise, he alleges that Wright is responsible because of her staff's actions.  These allegations,

---

[4] See *Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

9

however, reflect only vicarious liability. *Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . .").

Plaintiff also fails to plausibly allege that Prator or Wright implemented an unconstitutional policy, practice, custom, or procedure that caused his injuries. He alleges that Prator is responsible for providing medical care to all inmates and maintains a facility which intentionally neglects inmates' medical needs, but he does not plausibly allege, for instance, that Prator maintained a custom or practice of deliberate indifference with respect to responding to inmates' serious medical needs.[5]

Rather, Plaintiff only identifies lapses in *his* medical care. See *Lansdell v. Miller*, 817 F. App'x 27, 28 (5th Cir. 2020) ("Lansdell says that his own experience at the Lee County jail suffices to show the existence of a municipal policy to deny medical treatment. Typically, however, we cannot infer the existence of a policy merely from the conduct of several officers

---

[5] See *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("If Sheriff Belt did not knowingly disregard Thompkins' pleas to see a doctor, he cannot be held liable unless he knew the jail's system was so deficient as to expose prisoners to substantial risk of significantly unmet serious medical needs—*i.e.,* was unconstitutional—and failed to properly attempt to correct it, *and* unless his action or inaction in this respect caused Thompkins' injuries. . . . The sole possible basis for supervisory liability identified by the district court was that '[t]here either should have been professional medical attention available on the premises on a regular basis, or speedy access to the same.' However, Thompkins adduced no evidence whatever that the jail's treatment system had ever actually failed to deliver necessary and appropriate medical care to any other inmate, or that the sheriff was otherwise actually informed or consciously believed that the policy would expose prisoners to substantial risk of significantly unmet serious medical needs, and we find in the record no substantial evidence that the jail's policy for inmate medical treatment was constitutionally defective during the time Thompkins was incarcerated there. Accordingly, we conclude that Sheriff Belt cannot be held liable on the theory that he implemented an unconstitutional policy when the record below indicates no more than that the system may have failed in the one particular instance of Thompkins' back injury.").

during one incident.").[6] Plaintiff does not allege how often officials fail to provide medical care for himself and others in the manner the officials allegedly failed him here.[7]

---

[6] See also *Doe v. Harris Cty., Texas*, 751 F. App'x 545, 550 (5th Cir. 2018) ("The simple allegation that a 'policy or custom' existed, without reference to a specific policy or custom, is precisely the sort of formulaic pleading that does not pass muster under *Iqbal*. The only factual support offered for the conclusion that a policy or custom existed is that Doe herself was jailed. If this court were to treat this allegation as sufficient, it would collapse municipal liability under § 1983 into respondeat superior, which we plainly may not do."); *Sanchez v. Young Cty., Texas*, 866 F.3d 274, 280 (5th Cir. 2017) ("To be unconstitutional, however, a municipal entity's policy that derives from custom or practice must be so common and well settled as to constitute a custom that fairly represents municipal policy. Further, [a] municipality is almost never liable for an isolated unconstitutional action on the part of an employee. Plaintiffs offered no evidence about the alleged maltreatment of any other detainees at Young County's jail.") (quotations and quoted sources omitted).

[7] See *Balle v. Nueces Cty., Texas*, 690 F. App'x 847, 852 (5th Cir. 2017) ("Although an official policy usually exists in the form of written policy statements, ordinances, or regulations, . . . it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. . . . [A] complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.") (internal quotation marks and quoted sources omitted); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850-51 (5th Cir. 2009) (finding that twenty-seven complaints of excessive force against city police officers over a four-year period did not suggest a pattern so common and well-settled as to constitute a custom that fairly represented an official policy that was permissive of excessive force and noting: "Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. . . . A pattern requires similarity and specificity; [p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. A pattern also requires sufficiently numerous prior incidents, as opposed to isolated instances.") (internal quotation marks and quoted sources omitted); *Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002) (finding that eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry because "[e]leven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces.").

Finally, Plaintiff claims that Prator and Wright failed to train their employees. He alleges that Prator is "responsible for providing training" for employees. He alleges that Wright is "responsible for providing additional training to assist her medical staff members to provide professional medical care as needed to the inmates in a timely manner being housed at the facility. [sic]." He also claims, "Director Wright deliberately indifferent by lack of training and or follow up of her medical staff members that have intentionally refused proper and timely medical care for the plaintiff, which may have caused serious injuries to the plaintiff (a stroke). [sic]."

Plaintiff, however, does not specify what training defendants' subordinates lacked. He alleges that various officers and medical personnel failed to timely respond to his requests for care, but then he blames defendants' failure to train without identifying any deficiency in training. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective. . . . Plaintiffs cannot prevail by styling their complaints about the specific injury suffered as a failure to train claim.").[8] Essentially, Plaintiff seems to claim that Prator and Wright are vicariously liable for their subordinates' inaction. But again, defendants cannot be held vicariously liable.

The Court should dismiss these claims.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Gentry Vinson's

---

[8] See *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir.), *cert. denied,* 141 S. Ct. 376 (2020) ("Ratliff's complaint states in conclusory fashion that a 'deficiency in training actually caused Defendants Scudder and Sheffield to violate Plaintiff's constitutional rights.' But, absent specific allegations supporting a plausible causation inference, this legal conclusion does not state a claim for relief and warrants dismissal under Rule 12(b)(6).").

conclusory claims of lack of medical care, as well as his claims against Caddo Correctional Center, Sheriff Steve Prator, and Director Wright be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 19th day of February, 2021.

Karen L. Hayes
United States Magistrate Judge